STATE OF NORTH CAROLINA v. WILLIAM DICKSON MAXWELL

No. 8815SC784

(Filed 17 October 1989)

1. **Rape and Allied Offenses § 4.1 (NCI3d) — rape and taking indecent liberties with minor — attempt to show defendant as sexual deviant — evidence improperly admitted**

    In a prosecution of defendant for taking indecent liberties with a minor, his adopted daughter, and first degree statutory rape, the trial court erred in admitting evidence of defendant's frequent nudity, his frequent fondling of himself, and an adulterous affair, since the testimony was not evidence of defendant's plan or scheme to take advantage of his daughter; there was no medical or other physical evidence presented by the State in support of the prosecutrix's claims and no eyewitnesses so that the outcome of the case depended upon the jury's perception of the truthfulness of each witness; and the evidence, which was of questionable relevance and tended to make defendant appear to be a sexual deviant, could inflame the jury and cause a verdict to be entered on an improper basis. N.C.G.S. § 8C-1, Rules 403 and 404(b).

    **Am Jur 2d, Rape §§ 65, 67, 95.**

2. **Criminal Law § 35 (NCI3d) — rape and taking indecent liberties with minor — prosecutrix's prior accusation against uncle — evidence improperly excluded**

    In a prosecution of defendant for taking indecent liberties with a minor, his adopted daughter, and first degree statutory rape, the trial court erred in excluding evidence regarding a prior accusation of sexual misconduct made by the prosecutrix directed at her uncle, since it was error to exclude defendant's evidence which could show a possible alternative explanation about the crime with which he was charged.

    **Am Jur 2d, Rape § 87.**

STATE v. MAXWELL

[96 N.C. App. 19 (1989)]

**3. Criminal Law § 89.3 (NCI3d) — corroborating witnesses — testimony properly admitted**

There was no merit to defendant's contention that the trial court erred in allowing testimony of several witnesses for corroborative purposes when such testimony did not corroborate the testimony of prior witnesses, since some of the testimony was not objected to by defendant, and some of the testimony, though going beyond the prosecutrix's testimony, essentially corroborated the statements made by the prosecutrix.

**Am Jur 2d, Rape §§ 94-99.**

APPEAL by defendant from *Allen (J. B., Jr.), Judge*. Judgment entered 15 January 1988 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 21 February 1989.

Defendant was convicted on one charge of taking indecent liberties with a minor and two separate charges of first-degree statutory rape. Defendant was committed to two life sentences for the rapes, and a three-year sentence for the indecent liberties conviction. The court ordered defendant to serve the terms concurrently. From this order, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Ellen B. Scouten, for the State.*

*Latham, Wood, Eagles & Hawkins, by William A. Eagles; and Singleton, Murray & Craven, by Rudolph G. Singleton, Jr., for defendant-appellant.*

ORR, Judge.

Defendant's convictions relate to three separate incidents of alleged sexual abuse. The prosecutrix, who is the adopted daughter of the defendant, was 14 years old at the time she testified. She stated that in January of 1985 her mother was hospitalized for surgery. She and the oldest of her two brothers were being picked up from school and served dinner by their paternal grandparents during that period. Each evening, the two were taken home and put to bed by their father. On 3 January 1985, after the prosecutrix and her brother had been put to bed, defendant disrobed and went into the prosecutrix' room. Defendant allegedly climbed into bed

STATE v. MAXWELL

[96 N.C. App. 19 (1989)]

on top of her, removed her underwear and forced her to engage in sexual intercourse with him.

The prosecutrix further testified that on 30 March 1986, Easter Sunday morning, defendant entered her room wearing only a robe. He then sat on her bed and awakened her by touching her on her chest and on her vaginal area. Defendant's sexual advances were interrupted when the prosecutrix' two younger brothers entered her room and refused to leave. The prosecutrix' mother entered her room and asked defendant and the two younger children to leave. The prosecutrix then dressed and joined her family for breakfast.

The final incident allegedly occurred on 4 January 1987 after the prosecutrix' parents were separated. Defendant was babysitting for the three children while their mother was away for the day. On that evening, after all three children had been put to bed, defendant entered the prosecutrix' room and forced her to have sex with him. When the prosecutrix' mother returned, defendant left and spent the night at his parents' home.

On 24 January 1987, while the prosecutrix was on an overnight ski trip with her mother and a friend of her mother's, the prosecutrix' aunt found a letter she had written to a rock band named "Motley Crue." In this letter, the prosecutrix stated that her father had been forcing her to have sex with him since she was four years old. She also asked the band for their help. The prosecutrix' aunt told the girl's grandparents who then told the prosecutrix' mother. Her mother thereafter told James Graves, a family friend, about these alleged incidents. Mr. Graves first confronted defendant with these allegations and then contacted the Burlington Police. Thereafter, the prosecutrix was interviewed by employees from the Burlington Police Department and from the Alamance County Department of Social Services. Following an examination of the prosecutrix by a physician and a child psychologist, the defendant was arrested and charged as previously indicated.

Defendant denies all allegations of sexual misconduct. He contends that his daughter has fabricated these stories and that she is not a credible witness.

Defendant has raised 12 issues in his appeal before this Court. The first of the three issues which we address and which in part forms the basis of our decision to grant defendant a new trial

STATE v. MAXWELL

[96 N.C. App. 19 (1989)]

relates to the admission of prejudicial evidence. The second issue we address relating to the court's exclusion of relevant and probative information also supports our decision to grant defendant a new trial. The final issue we address which relates to the admission of corroborating testimony is discussed in this opinion due to the likelihood that this issue may arise again in defendant's new trial.

I.

[1] The first issue which we shall address is whether the trial court erred in admitting testimony of alleged prior bad acts of a sexual nature committed by defendant. Defendant argues that this testimony, which was admitted in violation of G.S. 8C-1, Rule 403, is unduly prejudicial to him. The State contends that the evidence was properly admitted pursuant to G.S. 8C-1, Rule 404(b) to show defendant's plan or scheme to take advantage of his daughter.

G.S. 8C-1, Rule 403 states: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In order to determine whether this testimony should have been admitted, the trial court was required to perform a balancing test, thereby weighing the probative value of the proffered testimony against its potential prejudicial impact on the jury. *State v. Knox*, 78 N.C. App. 493, 337 S.E.2d 154 (1985). This decision rests within the sound discretion of the court. *Id.*

The three areas of alleged personal misconduct to which several witnesses testified are defendant's frequent nudity, his frequent fondling of himself and an adulterous affair, all of which were objected to by defendant.

In the case before us, the prosecutrix' mother testified as follows:

Q. Now during the—the time that—that you were married to Mr. Maxwell, how did he normally—what did he normally sleep in in terms of dress?

A. He slept in the nude.

MR. MESSICK: Objection.

COURT: Overruled.

Q. You may answer.

A. He slept in the nude.

. . .

Q. And was that still after the children were born?

A. Yes, sir.

Q. Now were there ever occasions when he would present himself to Shannon in the nude?

MR. MESSICK: Object.

. . .

Q. Were there ever times when you were in the room with your husband and Shannon and he had no clothes on?

A. Yes, sir.

. . .

Q. And how old was Shannon at that time?

A. At all ages.

. . .

Q. And was he still—did it still happen then when she was eleven?

A. Yes, sir.

Q. Did you ever say anything to him about it?

A. Yes, I did.

A. I felt that it wasn't proper to run around without your clothes on in front of a child her age, even the boys for that matter. I was constantly telling him that I didn't appreciate it and asking him not to do it.

Q. And what was his response?

A. That—that was the way he was going to do things and if I didn't like it too bad.

This witness further testified that defendant would go to the children's bedrooms in the nude to check on them. She stated that this situation was a "constant battle" between her and her

ex-husband. She testified that defendant would fondle himself in front of her and the children. According to her testimony, this "was a constant thing with him." She stated that defendant would use his hand and stroke his penis in the presence of the prosecutrix. When she would complain about his behavior, defendant would respond that he could do what he wanted to do in his house. The prosecutrix' mother also testified about having allegedly "caught him [defendant] with this other woman." She testified at length to having sat outside this other woman's apartment and having followed the two to a Holiday Inn. She further testified to a fist fight which took place between herself, defendant and her sister when she refused to allow him to enter their home after discovering his alleged affair.

The prosecutrix' aunt testified that the prosecutrix' mother had told her of her arguments with defendant concerning his frequent nudity and his alleged affair. Mr. Graves, a family friend, further testified that he stopped visiting defendant and his family because he could "no longer tolerate his [adulterous] behavior." He testified that defendant admitted to him that he was "running around on his wife."

After closely scrutinizing this testimonial evidence, we are unable to agree with the State's contention that this testimony was properly admitted as evidence of defendant's plan or scheme to take advantage of his daughter. The prosecutrix' mother stated that defendant regarded nudity as normal; therefore, there is no evidence that he was attempting to prepare the prosecutrix for sexual intercourse with him by "making her aware of such sexual conduct and arousing her" as was the case in *State v. Williams*, 318 N.C. 624, 632, 350 S.E.2d 353, 358 (1986). Furthermore, the *only* testimony from the prosecutrix regarding defendant's fondling of himself in her presence involved one occasion when she was younger in which she stated that she had gotten up from a nap and had gone into a room where her father was seated on the couch "playing with himself." When she entered the room, defendant told her to "get back upstairs and get in the bed." She also testified that on one other occasion when she was 11 years old, she observed her father fondling himself with a book in his lap in an attempt to hide what he was doing. She stated that she was only in the room for a "second" at that time.

STATE v. MAXWELL

[96 N.C. App. 19 (1989)]

There was no connection between evidence of defendant's alleged affair and the crimes with which he was charged. This evidence does not establish a plan or scheme to commit the offenses charged. In fact, it does little more than impermissibly inject character evidence which raises the question of whether defendant acted in conformity with these character traits at the times in question. *See* G.S. 8C-1, Rule 404. "[S]ubstantive evidence of a defendant's past, and distinctly separate, criminal activities or misconduct is generally excluded when its only logical relevancy is to suggest defendant's propensity or predisposition to commit the type of offense with which he is presently charged." *State v. Shane*, 304 N.C. 643, 653-54, 285 S.E.2d 813, 820 (1982). The admission of this inflammatory evidence was highly prejudicial to defendant's defense. Moreover, we find that this is essentially a case of who and what to believe—the prosecutrix' accusations or defendant's claim of innocence. There was no medical or other physical evidence presented by the State in support of the prosecutrix' claims. There were no eyewitnesses to these alleged events; therefore, the outcome of this case depended upon the jury's perception of the truthfulness of each witness. Consequently, the court's admission of evidence which could inflame the jury and cause a verdict to be entered on an improper basis, such as emotion, was prejudicial. In the absence of this extensive, highly prejudicial evidence, which was of questionable relevance and which tended to make defendant appear to be a sexual deviant, we cannot say that a different result could not have been reached. *See State v. Kimbrell*, 320 N.C. 762, 360 S.E.2d 691 (1987). Defendant has met his burden of demonstrating prejudice under G.S. 15A-1443.

II.

[2] Defendant further asserts that he was prejudiced by the court's exclusion of evidence regarding a prior accusation of sexual misconduct made by the prosecutrix directed at her uncle. The State contends that this evidence was properly excluded because there is no proof that the allegation was false, and because the allegation was made at least nine years prior to this trial. We reject the State's argument for the following reasons.

The excluded testimony related to an incident when the prosecutrix was approximately four years of age. After observing the prosecutrix masturbating, her parents asked her why she was behaving that way. She stated that her "Uncle Scott showed [her]."

Two of the charges before us today involve testimony by the prosecutrix that her father had been sexually molesting her since age four. This evidence of a previous allegation involving untoward sexual behavior perpetrated on the prosecutrix is highly relevant to the charges against defendant. If we accept her prior allegations as true, then, as the State has pointed out, the prosecutrix' excessive masturbation might have been indicative of sexual abuse. The accusation against her Uncle Scott is probative of identifying the perpetrator of that abuse. In *State v. McElrath*, 322 N.C. 1, 366 S.E.2d 442 (1988), our Supreme Court stated that: " 'Any evidence calculated to throw light upon the crime charged' should be admitted by the trial court." *Id.* at 13, 366 S.E.2d at 449. The court then concluded that the trial court's exclusion of one of defendant's exhibits which could have constituted a possible alternative explanation about the crime with which defendant was charged was error. *Id.* Likewise, we find that the trial court's exclusion of this evidence was error as well.

### III.

[3] The remaining issue which we shall discuss relates to whether the trial court erred in admitting the testimony of several witnesses for corroborative purposes when such testimony did not corroborate the testimony of prior witnesses. Defendant contends that the trial court erred in allowing testimony from eight witnesses to be received as substantive evidence. He claims that multiple hearsay was admitted for the purpose of corroborating statements which the witnesses had not made. Furthermore, he contends that much of the evidence was unduly prejudicial to him in violation of G.S. 8C-1, Rule 403.

> In order to be corroborative and therefore properly admissible, the prior statement of the witness need not merely relate to specific facts brought out in the witness's testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony.

*State v. Ramey*, 318 N.C. 457, 469, 349 S.E.2d 566, 573 (1986). Moreover, "[t]o be admissible as corroborative evidence, testimony of a prior statement by the witness sought to be corroborated does not have to be precisely identical to such prior testimony of that witness." *State v. Madden*, 292 N.C. 114, 128, 232 S.E.2d 656, 665 (1977).

STATE v. MAXWELL

[96 N.C. App. 19 (1989)]

The prosecutrix gave testimony on direct and cross-examination regarding two alleged incidents of rape and one alleged incident of indecent liberties being taken with her. She stated that after her aunt found the letter which she had written to "Motley Crue," she told her two best friends, who were her schoolmates, about these incidents. Thereafter, the prosecutrix was interviewed by a policewoman from the Burlington Police Youth Division, a social worker with the Alamance County Department of Social Services, a child psychologist and a gynecologist. The prosecutrix told each of these witnesses about the alleged sexual abuse during her conversations with them.

The transcript reveals that these four professionals testified to the incidents of alleged abuse as they had been described by the prosecutrix. Nicole Cox, one of the prosecutrix' schoolmates, testified, without objection from the defense, about a conversation in which the prosecutrix told her she had been molested by her father since the age of four. Marissa Forbes, another schoolmate, gave the same testimony. When viewing the testimony of these witnesses which described the alleged sexual abuse, we find that their statements do essentially corroborate the statements made by the prosecutrix. Although Marissa Forbes' testimony went beyond what the prosecutrix testified to telling Marissa, her statements mirrored those of Nicole Cox which were received without objection. Consequently, defendant waived his right to challenge that testimony on appeal. See State v. Moses, 316 N.C. 356, 362, 341 S.E.2d 551, 555 (1986).

Likewise, defendant's challenge to the admission of statements made by the prosecutrix' mother and aunt regarding the alleged sexual abuse must also fail. The admission of their testimony is not reversible error. Testimony of the same nature was properly received from other witnesses as corroboration of the prosecutrix' statements. Therefore, the testimony from her mother and aunt was, at worst, redundant and not prejudicial to defendant's case. Id.

Based upon the foregoing, we hold that defendant is entitled to a new trial. We have considered the collective impact of the evidence which was admitted in error and we find that although each individual witness's testimony may not have been sufficient independent grounds for reversal, the aggregate effect of such evidence was to prejudice defendant's right to a fair trial. As to

defendant's remaining assignments of error, we find them to be without merit and decline to address them.

New trial.

Judges BECTON and PARKER concur.