STATE OF NORTH CAROLINA v. STEVEN KELLY BUSH

No. COA03-612

(Filed 18 May 2004)

## 1. Evidence— expert testimony—victim sexually abused by defendant—plain error

The trial court committed plain error in a first-degree sexual assault case by admitting the testimony of a pediatric gynecology expert that the victim was sexually abused by defendant even though the expert found no physical evidence of sexual abuse, because: (1) in a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has in fact occurred since, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility; (2) the victim was the only person to attest to the alleged sexual abuse by defendant and her credibility was questionable based on the facts that she delayed the report of the abuse for some time, the abuse was first alleged while in an argument with her mother, the mother was seeing defendant after a recent divorce with the victim's father, there was testimony from the mother that the victim wanted to break up the mother and defendant, and no other incidents had been alleged against defendant; and (3) the expert's testimony added tremendous credibility to the victim's alleged abuse by defendant, and the conclusive nature of the testimony as to the sexual abuse as well as naming defendant as the perpetrator was highly prejudicial.

## 2. Evidence— pornographic videotapes—sexual assault— relevancy

The trial court erred in a first-degree sexual assault case by allowing the State to introduce evidence over defendant's objection that defendant bought and owned pornographic videotapes, because: (1) there was no evidence that defendant provided pornographic videotapes to the victim or employed the tapes to seduce the victim; (2) the tapes impermissibly injected defendant's character into the case to raise the question of whether defendant acted in conformity therewith at the time in question; (3) the mere possession of pornographic materials does not meet the test of relevant evidence under N.C.G.S. § 8C-1, Rule 401; (4) evidence that one tape was brought into the home after the inci-

dent in question substantially weakens the potential use of the box of that tape under N.C.G.S. § 8C-1, Rule 404 for the theories of intent or absence of mistake at the time of the incident; and (5) assuming arguendo that the video box could be admitted under Rule 404(b), the video box had a clear prejudicial effect upon the divided jury in this case.

3. **Criminal Law— instructions—affirmative defenses— sleep—unconsciousness—diminished capacity**

The trial court in a first-degree sexual assault case should instruct the jury as to the unconsciousness/diminished capacity affirmative defense of sleep, along with any other defenses which have been sufficiently raised by the evidence presented at a new trial, because: (1) there is no direct evidence that defendant was awake at the time of the alleged touching; and (2) being asleep is an appropriate circumstance that requires an unconscious or diminished capacity instruction.

Judge LEVINSON concurring in part and dissenting in part.

Appeal by defendant from judgment entered 12 September 2002 by Judge Kimberly S. Taylor in Davie County Superior Court. Heard in the Court of Appeals 4 February 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Diane G. Miller, for the State.*

*Miles & Montgomery, by Mark Montgomery, for defendant appellant.*

McCULLOUGH, Judge.

Defendant was convicted of first-degree sexual assault and sentenced to a minimum of 336 months and a maximum of 413 months. The evidence during the State's case tended to show the following: PB, a twelve-year-old girl, and her younger sister, a seven-year-old girl, were staying over at their mother's home. PB's mother, Rita, had visitation rights with the children every other weekend. PB's father and Rita had recently been divorced, with PB's father having primary custody.

After watching a scary movie one evening, PB and her sister went to sleep in the same bed with Rita and defendant. This was not unusual. When the girls first were in the bed, Rita was in between the two girls and defendant. During the night, the younger sister kept

kicking PB, and waking everyone up in the bed. At defendant's suggestion, PB moved to the other side of the bed, in between her mother and defendant.

Later during the night, defendant is alleged to have rubbed PB's genital area on the outside of her pajamas, after which he then inserted his finger into her vagina. Defendant continued to keep moving his finger inside her. After removing his finger, PB went to the bathroom. When her mother asked what was wrong, she replied that she was hot. Defendant got out of bed, went into the living room and had a cigarette. When he got out of bed, PB called to Rita, "He's following me." PB then got back in bed between her sister and defendant, but closer to her sister. The time period of the alleged incident, whether it was the school year or summer, was unclear in PB's memory.

After not telling anyone of the incident for sometime and expressing desire to discontinue the visitation pattern with her mother by skipping some visits, PB revealed what defendant had done. She did so during an argument she was having with Rita. Shocked by what her daughter told her, Rita then confronted defendant.

PB and Rita testified that defendant denied doing anything and was upset. Rita then suggested that it may have been an accident, or that he had done it in his sleep, mistaking PB for her. Defendant said he did not think he could have touched PB at all, but if he had that it must have been in his sleep. He said he was sorry if that is what had happened, and it was decided that PB would not sleep next to him anymore.

The incident was not raised again until an investigation by DSS was conducted, the reasons for which are not of record. During the investigation, the victim's mother told a detective that she thought the victim was trying to break up her and defendant. Defendant fled to Nebraska until he was extradited back to North Carolina and imprisoned.

The expert testimony diagnosing PB as having been sexually abused by defendant, and evidence that defendant owned and watched pornographic videotapes, were part of the State's case in chief against defendant. Further facts relevant to the issues raised by defendant are incorporated below.

Defendant now raises four issues on this appeal. He argues the trial court committed reversible error as to the following: (I) improp-

erly admitting expert testimony definitively stating that defendant had sexually abused PB when there was no physical evidence of such abuse; (II) improperly admitting evidence of defendant's possession of pornographic videos and admitting into evidence one of the boxes of these videos; (III) failing to instruct the jury of the defenses of unconsciousness, mistake of fact, and accident; and (IV) improperly computing the prior record level of defendant for the purposes of sentencing. While we find admittance of the testimony of the State's expert witness constituted plain error, and grant a new trial on that ground, we will also address those issues relating to the pornographic videos and the jury instructions because they are likely to recur during a retrial.

## Expert Testimony Alleging Sexual Abuse

[1] Defendant contends that the trial court committed plain error in the admission of the testimony of Dr. Kathleen Russo, an expert in pediatric gynecology. Specifically, defendant argues admission of the doctor's statement at trial regarding her diagnosis of PB constituted plain error. Dr. Russo testified, "PB was sexually abused by Mr. Stephen Bush." She then went on to say that this diagnosis was "definite." Based on the facts of this case, we hold that allowing this highly prejudicial and otherwise inadmissible testimony rose to the level of plain error.

### I. Applicable Law

#### A. Standard of Review

There is some question as to what standard of review we are to apply. The record indicates that defendant objected to Dr. Russo's diagnosis, but stated no grounds for his objection and did not seek to strike her subsequent testimony or object to its conclusive nature. However, because we conclude the trial court's admission of such testimony constituted a miscarriage of justice, and therefore plain error, we will apply that standard to our analysis.

Plain error is "error 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Parker*, 350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999) (citations omitted), *cert. denied*, 528 U.S. 1084, 145 L. Ed. 681 (2000). Plain error does not simply mean obvious or apparent error." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). Our Supreme Court has explained that the plain error rule must be applied cautiously and

only in exceptional cases where, " 'after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." ' " *State v. Davis*, 349 N.C. 1, 29, 506 S.E.2d 455, 470 (1998), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999) (citations omitted).

### B. Expert Testimony of Sexual Abuse

"In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." *State v. Stancil*, 355 N.C. 266, 267, 559 S.E.2d 788, 789 (2002). *See also State v. Grover*, 142 N.C. App. 411, 417-18, 543 S.E.2d 179, 183-84, *aff'd*, 354 N.C. 354, 553 S.E.2d 679 (2001); *State v. Dick*, 126 N.C. App. 312, 315, 485 S.E.2d 88, 90, *disc. review denied*, 346 N.C. 551, 488 S.E.2d 813 (1997); *State v. Trent*, 320 N.C. 610, 614-15, 359 S.E.2d 463, 464-65 (1987). An expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has *symptoms or characteristics* so as to inform the jury that the lack of physical evidence of abuse is not conclusive that abuse did not occur. *State v. Hall*, 330 N.C. 808, 818, 412 S.E.2d 883, 888 (1992); *State v. Aguallo*, 322 N.C. 818, 822-23, 370 S.E.2d 676, 678 (1988); *State v. Kennedy*, 320 N.C. 20, 32, 357 S.E.2d 359, 366 (1987).

### II. Dr. Russo's Testimony

At trial Dr. Russo testified as to her qualification and certifications in Salisbury, North Carolina. This evidenced her undisputed status as an expert. She then testified to her involvement in the Child Medical Evaluations Program:

Q: Can you explain to the ladies and gentleman what the CME program is?

A: The CME or Child Medical Examination Program is an advocacy program for children that helps in investigating and determining if the child has suffered abuse, assisting in providing them treatment, assisting the non-offending family members this treatment and counseling, and then *helping to identify the individual responsible for the abuse and finding them guilty and the punishment for that.*

STATE v. BUSH

[164 N.C. App. 254 (2004)]

(Emphasis added.) Dr. Russo went on to explain her examination of PB and that she found no physical evidence of sexual abuse. She then testified that physical evidence in the vaginal area will not always be present and this would be "absolutely consistent" with that of a pre-pubertal child who has been sexually abused. Finally, when asked what her diagnosis of PB was, Dr. Russo stated: "My diagnosis was [PB] was sexually abused by [defendant]." The basis of her diagnosis was as follows:

> I was impressed by [PB's] sensory recollection. Children cannot fantasize visual and other sensory experiences at the same time and the fact that she could tell me how she felt, how she was feeling that evening, what she felt, and what she did when she realized what was happening, what Mr. Bush's response was when she realized he was waking up, where they were, where the other people in the family were at the time, all of that other sensory recollection was very telling and adds to the *credibility* of her story.

(Emphasis added.)

We hold the admission of Dr. Russo's diagnosis that PB was sexually abused by defendant was plain error by the trial court. This holding is based on the following facts: PB was the only person to attest to the alleged sexual abuse by defendant. While this is often the situation in sexual abuse cases, here PB's credibility was questionable as to the sexual abuse for a number of reasons. She delayed the report of the abuse for some time (how long is not clear from the record); it was first alleged while in an argument with her mother Rita; Rita was seeing defendant after a recent divorce with PB's father (who had been given primary custody of PB); there is testimony from Rita that PB wanted to break up her and defendant; and no other incidents had been alleged against defendant.

Dr. Russo's testimony added tremendous credibility to PB's alleged abuse by defendant. In her testimony, Dr. Russo reaffirms the details of PB's alleged abuse, as already testified to by PB, and without additional physical evidence. The practical effect of Dr. Russo's testimony was to give PB's story a stamp of credibility by an expert in pediatric gynecology, and Dr. Russo stated so specifically. Dr. Russo's diagnosis did not only go to the credibility of PB's allegation of sexual abuse, but conclusively stated that defendant had sexually abused PB. Furthermore, because of Dr. Russo's involvement in the CME program, which she testified to before giving her diagnosis, the jury was

sure to be severely prejudiced by Dr. Russo's conclusion that defendant had sexually abused PB.

The State opines that the cases cited by defendant are distinguishable from the case at bar, and instead *State v. Reeder*, 105 N.C. App. 343, 413 S.E.2d 580, *disc. review denied*, 331 N.C. 290, 417 S.E.2d 68 (1992) applies. Without need to distinguish *Reeder*, we note at the outset that "*Reeder* seems to be an anomaly within the case law." *Grover*, 142 N.C. App. 411, 419, 543 S.E.2d 179, 184. Additionally, this case is distinguishable upon its face from those in *Stancil*. While our Supreme Court in *Stancil* affirmed our finding of no plain error despite similar improper expert testimony, in *Stancil* the corroborating evidence of abuse was much stronger, and the testimony by the examining doctors went only to the fact that the victim had been sexually abused. In *Stancil*, the Court found no plain error where the jury had: (1) the testimony of the child; (2) evidence of her intense and immediate emotional trauma after the incident; (3) the consistency of her accounts; (4) her demeanor and physical manifestations during the interviews and first physical exam; (5) evidence of her symptoms and exam by examining doctors five days later; and (6) the conclusions of two experts that her actions and statements were consistent with child maltreatment or abuse. *State v. Stancil*, 146 N.C. App. 234, 240, 552 S.E.2d 212, 216 (2001), *aff'd*, *State v. Hughes*, 560 S.E.2d 148 (2002).

In the case at bar, any and all corroborating evidence is rooted solely in PB's telling of what happened, and that her story remained consistent. Furthermore, the testimony of Dr. Russo in this case was of greater prejudicial impact than that in *Stancil*, as she concluded, based upon her credibility assessment of PB's story, that it was defendant who had sexually abused PB.

Therefore, the conclusive nature of Dr. Russo's testimony as to the sexual abuse and that defendant was the perpetrator was highly prejudicial. This constituted plain error. Defendant is entitled to a new trial.

### Pornographic Videos

[2] Although we have granted a new trial on the basis of the prejudicial expert testimony introduced at trial, we will address defendant's objection to evidence introduced by the State that defendant bought and owned pornographic videotapes. We do so as this issue is likely to recur at any new trial. We conclude it was error to admit any and all evidence of such tapes.

STATE v. BUSH

[164 N.C. App. 254 (2004)]

In the case at bar, the State was allowed to admit testimony that defendant had previously bought and owned pornography pursuant to N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003). Furthermore, a box of one of the tapes which he had purchased, depicting young women having sex and entitled "Little Pussy," was published to the jury. Rita's testimony showed this tape was first brought into PB's home after the incident in question. There was no evidence that defendant provided pornographic videotapes to PB or employed the tapes to seduce PB. Absent proof that the tapes were so utilized, such evidence, so tenuously related to the crime charged, impermissibly injected defendant's character into the case to raise the question of whether defendant acted in conformity therewith at the times in question. *See State v. Smith,* 152 N.C. App. 514, 521-22, 568 S.E.2d 289, 294, *disc. review denied, appeal dismissed,* 356 N.C. 623, 575 S.E.2d 757 (2002).

While Rule 404(b) relating to prior bad acts of defendant is generally a rule of inclusion, the evidence offered must be relevant and limited to showing such things as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. Gen. Stat. § 8C-1, Rule 404(b). Only those acts which follow the rationale of the rule, with a relevant purpose other than to show that defendant had the disposition to commit the alleged crime, are admissible under the rule. *See State v. White,* 135 N.C. App. 349, 520 S.E.2d 70 (1999), *disc. review allowed,* 351 N.C. 120, 541 S.E.2d 472, *disc. review withdrawn,* 351 N.C. 191, 541 S.E.2d 726 (1999) (evidence of prior sexual assault by the defendant was too dissimilar and only shows propensity to commit sexual acts against young female children). For the purposes of Rule 404(b), our Supreme Court has defined "similar" to mean "some unusual facts present" or "particularly similar acts" in the prior bad act of the defendant which indicates the same person committed the act at issue. *State v. Stager,* 329 N.C. 278, 303, 406 S.E.2d 876, 890-91 (1991) (citations omitted).

In *Smith,* the defendant was on trial for taking indecent liberties with a minor and first-degree sexual offense of a female child under thirteen. The State was allowed to introduce evidence that the defendant possessed pornography.[1] On appeal, we held that the intro-

---

1. The dissent attempts to draw a distinction between the picture depicted on the sleeve/jacket of the videotape and the contents of the videotape. Only the sleeve/jacket of the videotape was admitted at trial. As a video is nothing more than a series of still photos which when viewed in motion become motion pictures (as they are now classically termed), the same legal rules apply to both the still and the motion pictures.

**STATE v. BUSH**

[164 N.C. App. 254 (2004)]

duction of the evidence about pornography was inadmissible where there was no evidence that defendant had the complainant view the material with him:

> We agree with defendant's contention that the only purpose of such evidence was to impermissibly inject the defendant's character into the case to raise the question of whether defendant acted in conformity with his character at the times in question. . . . We hold that evidence of defendant's possession of pornographic materials, without any evidence that defendant had viewed the pornographic materials with the victim, or any evidence that defendant had asked the victim to look at pornographic materials . . . was not relevant to proving defendant committed the alleged offenses in the instant case and should not have been admitted by the trial court.

*Smith*, 152 N.C. App. at 522-23, 568 S.E.2d at 294.

Here there was evidence by PB's mother that the child never saw any of defendant's videos. Therefore, any evidence of the purchase or ownership of pornographic tapes is inadmissible under Rule 404(b) and *Smith*, and would constitute prejudice at any new trial. Therefore, allowing testimony of the tapes and/or publishing them to the jury is error.

The dissent would find the video box admissible under Rule 404(b) pursuant to several of that rule's rationales. When evidence of prior similar sexual offenses or acts by the defendant is offered, our Supreme Court has been markedly liberal in allowing such evidence. *See, e.g., State v. Artis*, 325 N.C. 278, 299, 384 S.E.2d 470, 481 (1989), *vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). However, the mere possession of photographic images, whether in still form or on a videotape, has been deemed inadmissible as the defendant's possession of such materials does not establish motive, intent, common scheme or plan; rather the possession of such materials is held only to show the defendant has the propensity to commit the offense for which he is charged and to be highly inflammatory. *Smith*, 152 N.C. App. at 521-22, 568 S.E.2d at 294. *See also, State v. Doisey*, 138 N.C. App. 620, 628, 532 S.E.2d 240, 246, *disc. review denied*, 352 N.C. 678, 545 S.E.2d 434 (2000), *cert. denied*, 531 U.S. 1177, 148 L. Ed. 2d 1015 (2001). Likewise, the mere possession of pornographic materials does not meet the test of relevant evidence under Rule 401 of the North Carolina Rules of Evidence.

**STATE v. BUSH**

[164 N.C. App. 254 (2004)]

N.C. Gen. Stat. § 8C-1, Rule 401. Rule 401 requires the evidence has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than . . . ." *Id.*

In *Doisey*, where the defendant was charged with two counts of sexual assault of his girlfriend's daughter, testimony was offered by the State that defendant may have filmed, by hidden camcorder, children using the bathroom at the victim's home. The Court found evidence of his possession of such tapes, despite being "deviant" behavior, did not sufficiently meet the rationale of Rule 404(b) to be admissible under any theory. *Doisey*, 138 N.C. App. at 628, 532 S.E.2d at 246. In *Maxwell*, where the defendant was charged with taking indecent liberties with a minor and two separate charges of first-degree statutory rape of his adopted daughter, the Court found the following evidence of defendant's acts did not fall under any theory of Rule 404(b): defendant would go to the children's bedrooms in the nude to check on them; defendant would fondle himself in front of the mother and the children; and that defendant would use his hand and stroke his penis in the presence of the victim. *State v. Maxwell*, 96 N.C. App. 19, 23-25, 384 S.E.2d 553, 556-57 (1989), *cert. denied*, 326 N.C. 53, 389 S.E.2d 83 (1990). The Court went on to conclude:

> [W]e find that this is essentially a case of who and what to believe—the prosecutrix' accusations or defendant's claim of innocence. There was no medical or other physical evidence presented by the State in support of the prosecutrix' claims. There were no eye witnesses [sic] to these alleged events; therefore, the outcome of this case depended upon the jury's perception of the truthfulness of each witness. Consequently, the court's admission of evidence which could inflame the jury and cause a verdict to be entered on an improper basis, such as emotion, was prejudicial. In the absence of this extensive, highly prejudicial evidence, which was of questionable relevance and which tended to make defendant appear to be a sexual deviant, we cannot say that a different result could not have been reached.

*Id.* We see no way around the facts and holdings in *Smith*, *Doisey* and *Maxwell* in attempting to apply Rule 404(b) to admit the evidence in question. Additionally, the only evidence of when this tape was brought into PB's home, was the testimony of Rita stating it was sometime after the incident in question. This evidence substantially weakens the potential use of the video box under Rule 404(b)

as to the dissent's theory of intent or absence of mistake at the time of the incident.

Assuming *arguendo* the video box could be admitted under Rule 404(b), a trial court must then determine whether its probative value is substantially outweighed by its prejudicial effect pursuant to N.C. Gen. Stat. § 8C-1, Rule 403. *See State v. Everhardt*, 96 N.C. App. 1, 18, 384 S.E.2d 562, 572 (1989), *aff'd*, 326 N.C. 777, 392 S.E.2d 391 (1990). Pursuant to Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. N.C. Gen. Stat. § 8C-1, Rule 403. This probative value must not merely be outweighed by the prejudicial effect, but substantially outweighed. *State v. Lyons*, 340 N.C. 646, 669, 459 S.E.2d 770, 782 (1995).

The video box had a clear prejudicial effect upon the jury in this case. The jury specifically requested it be sent into the jury room before deliberating. In little less than an hour of deliberating, the transcript reveals that the jury could not reach a verdict. The judge said they had not been deliberating long enough for him to declare a mistrial and sent them back. It is reasonable to assume the presence of the pornographic video in the room of an apparently divided jury could have a very prejudicial effect, where as demonstrated in our Rule 404(b) analysis above, the value was tenuous.

### Jury Instructions

[3] While our order of a new trial is based on the analysis above, we herein address what instructions should be submitted to the jury, assuming evidence similar to that adduced during the first trial is admitted (excluding the inadmissible testimony of Dr. Russo and that relating to the pornography). We believe the defendant will be entitled to the jury instruction of unconsciousness/diminished capacity pursuant to *State v. Connell*, 127 N.C. App. 685, 493 S.E.2d 292 (1997), *disc. review denied*, 347 N.C. 579, 502 S.E.2d 602 (1998).

In *State v. Caddell*, 287 N.C. 266, 290, 215 S.E.2d 348, 363 (1975), our Supreme Court held:

> [U]nder the law of this State, unconsciousness, or automatism, is a complete defense to a criminal charge, separate and apart from the defense of insanity; that it is an affirmative defense; and that the burden rests upon the defendant to establish this defense,

unless it arises out of the State's own evidence, to the satisfaction of the jury.

This defense is a complete bar from criminal liability because unconsciousness " 'not only precludes the existence of any specific mental state, but also excludes the possibility of a voluntary act without which there can be no criminal liability.' " *State v. Jerrett*, 309 N.C. 239, 264-65, 307 S.E.2d 339, 353 (1983) (quoting *State v. Mercer*, 275 N.C. 108, 116, 165 S.E.2d 328, 334 (1969)). When determining whether an instruction of diminished capacity should be submitted to the jury, the Court must consider whether there is evidence sufficient to cause a reasonable doubt in the mind of a juror as to whether defendant had a culpable mental state. *State v. Clark*, 324 N.C. 146, 163, 377 S.E.2d 54, 64 (1989). If there is evidence from which an inference can be drawn that defendant committed the act without the criminal intent necessary, then the law with respect to that intent should be explained and applied to the evidence by the Court. *State v. Walker*, 35 N.C. App. 182, 186, 241 S.E.2d 89, 92 (1978). In determining whether the evidence supports an instruction on any affirmative defense, the evidence should be viewed in the light most favorable to the defendant. *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537-38 (1988).

We believe *Connell*, a case almost factually identical, to be controlling upon the facts of this case as they have been presented thus far. In *Connell*, the defendant was involved with the victim's mother in a sexual relationship. *Connell*, 127 N.C. App. at 687, 493 S.E.2d at 292. One night when defendant was sleeping at the mother's house, the victim, an eight-year-old girl got in their bed after having a bad dream. *Id.* The victim testified that the defendant began rubbing her over her underwear, despite her pushing his hand away twice. *Id.* There was no testimony that defendant was awake during the incident.

As in *Connell*, "there is no direct evidence that the defendant was awake at the time of the alleged touching" in the case before us. *Id.* at 692, 493 S.E.2d at 296. PB testified that "no one moved or no one appeared to be awake" at the time the alleged touching occurred. She further testified that defendant did not speak at all during the alleged touching, nor did he react to the jerky movements she made in response to the touching. The Court in *Connell*, a case where the defendant also chose not to put on evidence, found that being asleep is an appropriate circumstance that requires an unconscious or

diminished capacity instruction, and that failure to provide such was plain error. *Id.*

Pursuant to the mandate of *Connell*, the trial court at any new trial should properly instruct the jury as to the unconsciousness/diminished capacity defense of sleep, along with all other defenses which have been sufficiently raised by the evidence presented at the new trial.

For the reasons set forth herein, defendant's conviction is reversed and defendant is awarded a new trial. At any new trial, the expert testimony of Dr. Russo, and any evidence relating to the pornographic tape, shall be excluded. Furthermore, jury instructions shall include the affirmative defense of unconsciousness/diminished capacity and any other defenses which have been sufficiently raised by the evidence.

New trial.

Judge HUNTER concurs.

Judge LEVINSON concurs in part and dissents in part with separate opinion.

LEVINSON, Judge, concurring in part and dissenting in part.

I agree that, given the circumstances of the present case, the trial court committed plain error by permitting Dr. Rousso to testify that her "diagnosis was [PB] was sexually abused by [the defendant]" and that defendant is, therefore, entitled to a new trial. However, I respectfully disagree with the majority's application of pertinent law concerning pornographic videotapes to the facts of this case. Furthermore, I make no comment on defendant's argument that the trial court erred in failing to instruct the jury on unconsciousness/diminished capacity.

The majority cites *State v. Smith*, 152 N.C. App. 514, 523, 568 S.E.2d 289, 295, *disc. review denied, appeal dismissed*, 356 N.C. 623, 575 S.E.2d 757 (2002) for the proposition that, because defendant did not provide the pornographic videotapes to PB or use the pornographic videotapes to seduce PB, evidence concerning the pornographic videotapes is inadmissible. However, careful analysis of *Smith* reveals that it neither establishes such a broad and blunt rule, nor could it have.

**STATE v. BUSH**

[164 N.C. App. 254 (2004)]

In *Smith*, the defendant was convicted of sexual offenses involving his twelve-year-old stepdaughter. At trial, the State introduced evidence tending to show that defendant possessed pornographic magazines and videos at home and at work. This Court held that, because there was no nexus between Smith's possession of pornography and the offenses for which he was being tried, the trial court erred in admitting such testimony. *Smith*, 152 N.C. App. at 521-22, 568 S.E.2d at 294. This result is entirely logical, as the facts set forth in that case indicate that the materials Smith possessed were general in nature and were not involved in the commission of the offenses with which he was charged.

In reaching this conclusion, this Court provided an analysis which included a discussion of two previous decisions in which the North Carolina Supreme Court held that evidence of a criminal defendant's possession of pornography was admissible. In one of those cases, *State v. Rael*, 321 N.C. 528, 533-34, 364 S.E.2d 125, 129 (1988), the Court ruled that evidence of pornographic pictures and movies was admissible to corroborate the four-year-old victim's testimony that the defendant showed him these items during the commission of the alleged sexual offenses. In the other case, *State v. Williams*, 318 N.C. 624, 632, 350 S.E.2d 353, 358 (1986), the Supreme Court held that evidence of a defendant's insistence that his daughter attend and watch an x-rated film with him was admissible in the defendant's trial for raping his daughter; the Court found that this evidence was relevant to show the defendant's "preparation and plan to engage in sexual intercourse with her and assist in that preparation and plan by making her aware of such sexual conduct and arousing her."

The analysis in *Smith* also discusses several cases from this Court holding that evidence of deviant behavior, which is unrelated to the commission of a sex offense, is not admissible. *See State v. Doisey*, 138 N.C. App. 620, 626, 532 S.E.2d 240, 244-45 (2000) (evidence that the defendant placed a camcorder in a bathroom used by children and others which taped the activities in the bathroom was not properly admitted to show design or scheme to take sexual advantage of children); *State v. Hinson*, 102 N.C. App. 29, 36, 401 S.E.2d 371, 375 (1991) (evidence that the defendant possessed photographs depicting him in women's clothing, dildos, lubricants, vibrators and two sexually-oriented books, was not properly admitted to show proof of intent, preparation, plan, knowledge and absence of mistake, in sexual offense case involving seven-year-old victim); *State*

*v. Maxwell*, 96 N.C. App. 19, 24, 384 S.E.2d 553, 556-57 (1989) (evidence that the defendant frequently appeared nude in front of his children and fondled himself in presence of his adopted daughter was not properly admitted to show defendant's plan or scheme to take advantage of his adopted daughter, where there was evidence that defendant regarded nudity as "normal" and the only testimony involving defendant fondling himself in front of his adopted daughter also revealed that defendant attempted to hide this behavior from her).

Relying on these cases, this Court gleaned the rule that evidence of a defendant's "mere possession" of pornography is not relevant where, as in the *Smith* case, the pornography is general in nature, is not in any way related to the offense, and is not used in the commission of the offense: "[E]vidence of defendant's possession of pornographic materials, without any evidence that defendant had viewed the pornographic materials with the victim, or any evidence that defendant had asked the victim to look at pornographic materials other than the victim's mere speculation, was not relevant to proving defendant committed the alleged offenses in the instant case and should not have been admitted by the trial court." *Smith*, 152 N.C. App. at 522-23, 568 S.E.2d at 294-95. Stated differently, the evidence of pornography in *Smith* was not relevant under the Rules of Evidence, directly or as interpreted in *Rael* and *Williams*.

However, I do not agree with the majority that *Smith* establishes a far broader rule which proscribes admission of the evidence at issue in the case *sub judice*. Rather, in my view, *Smith* and the cases it cites require the courts to review each piece of evidence in the context of the case in which it is presented. In the instant case, I conclude that the evidence of defendant's possession of pornography is probative of a matter at issue in defendant's trial.

"As a general rule, evidence of a defendant's prior conduct, such as the possession of pornographic videos and magazines, is not admissible to prove the character of the defendant in order to show that the defendant acted in conformity therewith on a particular occasion." *Smith*, 152 N.C. App. at 521, 568 S.E.2d at 294 (citing N.C. R. Evid. 404(b)). "However, such evidence of prior conduct is admissible so long as it is relevant to some purpose other than to show the character of the defendant and the defendant's propensity for the type of conduct for which he is being tried." *Id.* (citing, *inter alia, Rael* and *Doisey*). "Examples of such proper purposes include 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident.' " *Id.* (quoting N.C. R.

STATE v. BUSH

[164 N.C. App. 254 (2004)]

Evid. 404(b)). Thus, as the majority properly notes, "[o]nly those acts which follow the rationale of [Rule 404(b)], with a relevant purpose other than to show that defendant had the disposition to commit the alleged crime, are admissible under the rule."

In the instant case, the evidence with respect to pornographic videotapes falls into two categories: (1) the photographic depictions on the sleeve of a pornographic videotape possessed by defendant entitled "Little Pussy"[2] and (2) testimony by PB's mother that defendant possessed three or four pornographic videos, including the one at issue. In my view, neither is made inadmissible by operation of Rule 404(b).

### Photographic Depictions on Sleeve of the Pornographic Videotape

The evidence in question with respect to the videotape involves a cardboard sleeve containing nude images of females who appear to be in their early teens; at least one female is partially clothed in a plaid skirt and small tank-top; some of the females are engaged in sexual acts with adult men. The sleeve also contains writing which characterizes the females' bodies as "tight" and their genitalia as "bare". Although the jury did not watch the videotape, it did view this cardboard sleeve.

The trial court, after considering the arguments of counsel, made a finding that the photographic depictions on the videotape sleeve had legal relevance and admitted the sleeve. Cursory examination of the exhibit reveals that a reasonable jury could properly infer that the photos on the sleeve depict *young preteen* girls. Defendant stood accused of sexually assaulting a *young preteen* girl. PB testified that defendant denied the inappropriate touching but told her that, if he had done it in his sleep, he was sorry. PB's mother testified that defendant said something similar to her. Thus, there was some evidence of mistake, accident, or absence of intent. Defendant's possession of the videotape, which was encased in a sleeve depicting photographic images involving "young girls" constitutes an "act" that can be probative of defendant's sexual interest in young girls, which tends to prove intent, and/or absence of mistake or accident under Rule 404(b).[3] Given the obvious connection between the photographic

2. Hereinafter "the videotape."

3. The majority posits that the jury should likely be instructed on unconsciousness/diminished capacity, but would nonetheless preclude evidence tending to show that the actions of defendant were associated with an exercise of volition.

images and the issues presented to the jury, together with the allowances of Rule 404(b) and our responsibility to give deferential appellate review to evidentiary rulings, I cannot agree the court erred in admitting the photographic images on the sleeve of the videotape.[4] *See State v. Wallace,* 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991) ("[E]ven though a trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal.")

### *Testimony of PB's Mother*

Additional evidence was provided by PB's mother, who testified to circumstances that established defendant was the individual who purchased and possessed the videotape at issue. To accomplish this, she necessarily had to explain how the videotape was maintained with several others in the household. In addition, the mother testified as to how she came into possession of the videotape; when she provided it to the District Attorney's Office; and that the videotape was in fact the same one she had voiced concerns to defendant about in the past. On direct examination PB's mother testified as follows:

PROSECUTOR: When he brought [the videotape] in the home, you questioned him about it. What did you say about it? What did you ask him about it?

WITNESS: I asked him wasn't it about young girls.

PROSECUTOR: And what did he say to you?

WITNESS: Teenagers. He said, well, you have to be 18 to be in these kind of movies, it wasn't teenagers, it was 18 and above.

She explained that she only provided the one videotape to the prosecutor because it was the only one that depicted such young girls; and that none of her children, including PB, were allowed to watch any of the videotapes and she never observed them doing so. PB's mother also provided evidence that defendant obtained the videotape after he allegedly assaulted PB.

Thus, the record reveals that the clear import of all the testimony concerning the three or four videotapes was to establish that the

---

4. I cannot accept that visual depictions of young children possessed by those charged with sexual offenses are, *ipso facto,* inadmissible in prosecutions simply because they are part and parcel of a videotape. There is no authority to suggest that visual depictions—the gravamen of what the prosecutor sought to admit—cannot be probative in such prosecutions.

pornographic videotape with the sleeve depicting young girls was, in fact, one of the ones purchased and possessed by defendant. The whole point of allowing PB's mother to testify that defendant possessed three or four pornographic videotapes was to establish the circumstances surrounding the videotape at issue; this does not violate the Rules of Evidence. Indeed, trial courts necessarily have discretion to determine, on a case-by-case basis, the extent to which jurors can properly be informed about where, how, and under what circumstances the accused possessed such photographic depictions. The trial court was not required, for example, to reduce the depictions to xeroxed images on paper and preclude any further information concerning their origin.

For the sake of clarity, I note that with respect to both the videotape sleeve which was shown to the jury and the testimony of PB's mother concerning defendant's possession of pornography, the purpose of admitting this evidence is not, as the majority contends, limited to showing that "defendant has the propensity to commit the offense for which he is charged." Rather, the videotape with "young girls" on the sleeve, which defendant obtained after his alleged assault on PB, is probative that defendant's alleged inappropriate touching of PB, a young preteen girl, was not done by accident, by mistake or with a lack of intent. The testimony of PB's mother is probative of defendant's ownership of the videotape, although her testimony made brief mention of additional pornography in defendant's possession. Therefore, *Smith*, *Doisey*, and *Maxwell*, all of which dealt with other acts with no nexus at all to the offense for which those defendants were on trial, are not, as the majority contends, dispositive here.

Accordingly, I disagree with the majority's holding that the evidence presented concerning defendant's possession of pornography is inadmissible.[5] While generalized testimony that an accused possessed pornography might be legally unhelpful and violative of Rule 403 without some connection or association with a valid evidentiary issue for the trier of fact, the evidence concerning pornography at issue in the present case does not fall into such a category.

---

5. Furthermore, I do not discern the necessity of addressing the issues concerning the mother's testimony or the photographic depictions on the videotape sleeve, not only because defendant will receive the benefit of a new trial, but because defense counsel *thoroughly* cross examined PB's mother concerning everything defendant now complains of on appeal. *See State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995) (holding that, even though defendant objected to evidence, he "waived his objection by later cross-examining [the witness] about this same evidence").