STATE OF NORTH CAROLINA v. JIMMIE ELIJAH HINSON

No. 9025SC31

(Filed 5 March 1991)

1. **Rape and Allied Offenses § 5 (NCI3d) — sexual offense — fellatio on minor child — sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction of first degree sexual offense on the ground that he performed fellatio on the seven-year-old victim where the victim testified that defendant sucked on his "middle part" or "middle section" which he indicated was his crotch area; the victim testified that defendant "stuck his middle section in my butt" and demonstrated that he meant his buttocks area; the victim's mother testified that her son told her that defendant had "sucked his thing a bunch of times" and had "done it to him in the butt"; and an investigating officer testified that the victim told him that defendant "had performed oral sex on him."

**Am Jur 2d, Sodomy § 45.**

2. **Criminal Law § 89.5 (NCI3d) — testimony admissible for corroboration**

An officer's testimony that a child victim told him that defendant "had performed oral sex on him" was properly admitted to corroborate testimony by the victim that defendant sucked on his "middle part" or "middle section," which he indicated was his crotch area, and testimony by the victim's mother that the victim said defendant sucked his "thing."

**Am Jur 2d, Infants § 17.5; Sodomy §§ 70, 71.**

STATE v. HINSON

[102 N.C. App. 29 (1991)]

**Modern status of rule regarding necessity for corroboration of victim's testimony in prosecution for sexual offense. 31 ALR4th 120.**

3. **Criminal Law §§ 34, 34.7 (NCI3d)— cross-examination of defendant—catalogue of condoms—sexual devices and books**

A defendant charged with first degree sexual offense against a minor child was properly cross-examined about a catalogue of condoms found in his home to show proof of intent, preparation, plan, knowledge and absence of mistake. However, the trial court erred in permitting defendant to be cross-examined about photographs depicting him in women's clothing, a dildo, lubricants, vibrators, and books entitled *Sexual Intercourse* and *The Sex Book* which were found in his home, but objection to this evidence was waived by defendant's failure to object to evidence of similar import, and admission of this evidence was not plain error. N.C.G.S. § 8C-1, Rule 404.

**Am Jur 2d, Witnesses §§ 467, 468, 492, 497.**

4. **Constitutional Law § 374 (NCI4th); Rape and Allied Offenses § 7 (NCI3d)— first degree sexual offense—life sentence not cruel and unusual punishment**

A sentence of life imprisonment imposed upon defendant for first degree sexual offense against a child did not constitute cruel and unusual punishment.

**Am Jur 2d, Criminal Law §§ 625-627; Sodomy §§ 97, 98.**

APPEAL by defendant from judgment entered 9 October 1989 by *Judge James U. Downs* in CATAWBA County Superior Court. Heard in the Court of Appeals 25 September 1990.

On 17 January 1989 defendant was indicted for one count of first degree sexual offense and one count of taking indecent liberties with a minor. During trial, the State presented evidence that the victim, a seven-year-old boy, visited defendant, a fifty-three-year-old man, at defendant's house four times during the summer of 1988. Defendant and the victim's mother had arranged for these visits.

The victim testified about each visit. He testified that nothing unusual happened during his first visit. The victim testified that during his second visit, defendant began "doing things to [him]"

and "talking dirty." He testified that defendant began "sucking on [his] middle part," which he indicated was his crotch area. The victim testified that he did not tell his mother because defendant told him not to. The victim further testified that during the third visit, the defendant also "sucked on [his] middle section" and "stuck his [defendant's] middle section in his [victim's] butt." The victim testified that nothing happened to him during his fourth visit.

The victim's brother, who was eleven in September 1988, testified that he also stayed with defendant during the victim's fourth visit. He testified that he, along with his brother, defendant and another male youth slept in defendant's bed during that visit. The victim's brother testified that during the course of the night defendant put his arm around him and threw his leg over him. The victim's brother testified that after this incident he slept somewhere else. The victim's brother further testified that defendant discussed sexual matters with him during his visit. He testified that defendant showed him some condoms and said that they "were for whenever we were gong [sic] to make love." The victim's brother further testified that he had to ask defendant to leave after he observed defendant watching him and the victim change clothes in a department store's dressing room. The victim's brother testified that defendant hugged him and sucked on his ear. He stated that defendant's actions made him feel uncomfortable. The victim's brother stated that he told his mother what had happened as soon as defendant left after taking them back home. The victim's mother then called the police. The victim's mother and the investigating officers testified for the purpose of corroborating the victim's testimony.

Defendant offered the testimony of several witnesses who testified about his reputation and the alleged incidents. Defendant testified that he offered to let the children stay with him because their mother was having problems with her boyfriend. He admitted that they all slept in the same bed, but denied any sexual misconduct. Defendant testified that he never saw either of the boys nude. On cross-examination, the State questioned defendant about the following items which were found in his home: photographs depicting him in women's clothing; dildos; a catalogue of condoms; lubricants; vibrators; a book entitled *Sexual Intercourse*; and a book entitled *The Sex Book*.

At the end of the State's evidence, the trial court granted defendant's motion to dismiss the indecent liberties charge, but denied defendant's motion to dismiss the first degree sexual offense charge. The jury found defendant guilty of first degree sexual offense based upon fellatio. The trial court imposed the mandatory life sentence. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General William F. Briley, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

EAGLES, Judge.

[1] Defendant initially assigns as error the trial court's failure to dismiss the charges against him. Defendant argues that the evidence was insufficient to convict him of first degree sexual offense on the grounds that he performed fellatio on the victim. We disagree.

> On a motion to dismiss, the trial court must determine from all the evidence, taken in the light most favorable to the State, whether there is substantial evidence that the crime charged has been committed and that the accused is the one who did it. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In judging the sufficiency of the State's evidence, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom.

*State v. Watkins*, 318 N.C. 498, 501-02, 349 S.E.2d 564, 566 (1986). (Citations omitted.)

G.S. 14-27.4 provides that "[a] person is guilty of a sexual offense in the first degree if the person engages in a sexual act: (1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]" "A sexual act is defined as 'cunnilingus, fellatio, analingus, or anal intercourse . . . [or] the penetration, however slight, by an object into the genital or anal opening of another body . . . [except for] accepted medical purposes.'" 318 N.C. at 501, 349 S.E.2d at 565. (Citations omitted.)

STATE v. HINSON

[102 N.C. App. 29 (1991)]

Here, the jury convicted defendant of first degree sexual offense based upon testimony that defendant performed oral sex on the victim. The victim's testimony with all reasonable inferences drawn in favor of the State is sufficient to support the finding that defendant committed first degree sexual offense on the victim. The victim testified during direct that defendant sucked him on his "middle part" or "middle section" which he indicated was his crotch area. We note that during cross-examination, the victim stated that he did not know what a penis was. However, there was other testimony by the victim which was sufficient for the jury to conclude that the victim meant penis when he referred to "middle part" or "middle section." The victim testified that defendant "stuck his middle section in [his] butt." The victim demonstrated that by "butt" he meant his buttocks area.

Convictions have been upheld in cases where proof included testimony of a child victim even though the victim did not use the precise terms set out in G.S. 14-27.4. *See State v. Ludlum*, 303 N.C. 666, 667, 281 S.E.2d 159 (1981) ("defendant 'touched me with his tongue . . . between my legs' "); *State v. Watkins*, 318 N.C. 498, 499, 349 S.E.2d 564 (1986) (defendant stuck his finger in my "coodie cat"); *State v. Britt*, 93 N.C. App. 126, 129, 377 S.E.2d 79, 81, *appeal dismissed, disc. rev. denied, and cert. denied,* 324 N.C. 544, 380 S.E.2d 772 (1989), *overruled on other grounds, State v. Hartness,* 326 N.C. 561, 391 S.E.2d 177 (1990) (defendant used to touch me with his "weewee" and stuck it into my "peepee"); *State v. Griffin,* 319 N.C. 429, 431, 355 S.E.2d 474, 475 (1987) (defendant touched my "private parts"); *State v. Smith,* 315 N.C. 76, 79-80, 337 S.E.2d 833, 837 (1985) (defendant touched my "project" with his "worm" and victim pointed to her vaginal area).

Here, the victim's testimony was further corroborated by his mother who testified that her son told her that defendant had "sucked his thing a bunch of times" and had "done it to him in the butt." Sergeant Brewer, an investigating officer, testified that the victim told him that defendant "had performed oral sex on him." We find the evidence here sufficient to withstand the motion to dismiss and this assignment of error is overruled.

[2] Defendant next assigns as error the trial court's introduction of evidence under the guise of corroboration. Defendant argues that the statements made by the victim to Sergeant Brewer were inadmissible hearsay. Defendant argues that Sergeant Brewer's

testimony not only "extend[ed] the testimony of the prosecuting witness, it *interpreted* it for the jury." Defendant contends that since this testimony was offered to show that defendant touched the victim's sex organ, the Rules of Evidence and the Confrontation Clauses of both state and federal Constitutions were violated and defendant was manifestly prejudiced. We disagree.

> Corroboration is "the process of persuading the trier of the facts that a witness is credible." We have defined "corroborate" as "to strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." Prior consistent statements of a witness are admissible as corroborative evidence when the witness has not been impeached. However, the prior statement must in fact corroborate the witness' testimony. Slight variations between the corroborating statement and the witness' testimony will not render the statement inadmissible.

*State v. Riddle*, 316 N.C. 152, 156-57, 340 S.E.2d 75, 77-78 (1986) (citations omitted). "In order to be corroborative and therefore properly admissible, the prior statement of the witness need not merely relate to specific facts brought out in the witness's testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony." *State v. Ramey*, 318 N.C. 457, 469, 349 S.E.2d 566, 573 (1986).

In *State v. Higginbottom*, 312 N.C. 760, 324 S.E.2d 834 (1985), the defendant there objected to the testimony of the child victim's mother on the grounds that the testimony went beyond the scope of corroboration. The victim testified about sexual acts which the defendant performed on her. The mother later testified that the victim told her that the acts were "yucky." *Id.* at 768, 324 S.E.2d at 840. The defendant objected on the grounds that the victim did not describe the acts as being "yucky" during her testimony and therefore the mother's statement was not admissible as corroborative evidence. Our Supreme Court stated that while the mother's statement did not precisely track the victim's testimony, "it tended to confirm and strengthen her testimony." *Id.* at 769, 324 S.E.2d at 840. The court further stated that "[w]hether or not the statement was corroborative was a matter for the jury to decide, as the court correctly instructed." *Id.* The *Higginbottom* court further stated that even if the statement was not admissible, "[t]he statement provided insignificant embellishment to other

testimony which established ample evidence that defendant had committed the crime charged." *Id.* at 769, 324 S.E.2d 840-41.

After careful review of the record, we note that defendant did not object to Sergeant Brewer's statement that defendant had performed oral sex on the victim. Defendant merely objected and moved to strike the statement that defendant had placed his penis in the victim's face and the victim walked away. At that time, the trial court instructed the jury that it was to consider the evidence only for corroborative purposes. Defendant's other objections related to statements made by the victim's brother. Defendant did not object to Sergeant Brewer's use of the words "oral sex." Defense counsel even used the term "oral sex" while cross-examining Sergeant Brewer on how many times the victim said the "instant (sic) of oral sex" occurred. While the witness's testimony did not precisely track the testimony of the victim, it did in fact confirm and strengthen the victim's testimony as well as other corroborative testimony from other witnesses. The victim testified that defendant "sucked me on my my [sic] middle section." The victim's mother further testified that the victim said defendant sucked his "thing." Another investigating officer stated that the victim told him that defendant sucked his "mid section." Since this is ample evidence that defendant committed the crime charged, this assignment of error must be overruled.

[3] Defendant next contends that the trial court erred in allowing the State to cross-examine defendant concerning the following items on cross-examination: photographs, a dildo, a catalogue of condoms, lubricant, and two books entitled *Sexual Intercourse* and *The Sex Book*. Defendant contends that the cross-examination placed before the jury inflammatory material that was irrelevant. Defendant argues that the cross-examination denied him his "fundamental right to a fair trial," and that it was plain error for the trial court not to have intervened *ex mero motu*. We disagree.

"[E]vidence of 'other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.'" *State v. Rael*, 321 N.C. 528, 534, 364 S.E.2d 125, 129 (1988). "It is equally clear, however, that evidence of other crimes or acts by a defendant is admissible so long as it is *relevant to any fact or issue* other than the character of the defendant." *Id.* "Under Rule 401, 'relevant evidence means evidence having any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Id.*

"We have held in several recent cases that evidence of prior sex acts may have some relevance to the question of defendant's guilt of the crime charged if it tends to show a relevant state of mind such as intent, motive, plan, or opportunity. Such evidence is deemed admissible and not violative of the general rule prohibiting character evidence." *State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988). "Nevertheless, the ultimate test for determining whether such evidence is admissible is whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403." *Id.*

Here, the State argues that the evidence was offered as "proof of intent, preparation, plan, knowledge and absence of mistake." The State further asserts that this conclusion is evident in view of the fact that defendant showed the victim's brother condoms to be used "whenever [they] were going to make love." After careful review of the record, we find that the questions concerning the condoms were admissible to show "proof of intent, preparation, plan, knowledge and absence of mistake." However, it was error for the trial court to allow questions concerning the other evidence; but, we note that defendant entered a general objection at the beginning of cross-examination and failed to renew his objection when evidence of similar import was admitted. " 'It is well established that the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character.' " *State v. Bruce*, 315 N.C. 273, 282, 337 S.E.2d 510, 516 (1985).

Defendant argues that even if he did not properly object to the introduction of the evidence it was plain error for the trial court to allow its admission. We disagree.

In *State v. Black*, 308 N.C. 736, 303 S.E.2d 804 (1983), our State's Supreme Court stated that

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its

elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that defendant was guilty."

*Id.* at 740-41, 303 S.E.2d at 806-07.

In view of the overwhelming evidence of defendant's guilt, we find that the admission of the complained of evidence did not have a probable impact on the jury's guilty verdict. Accordingly, this assignment of error is overruled.

[4] Finally, defendant contends that the trial court erred in sentencing him to life imprisonment because it denied him of his state and federal constitutional right to be free from cruel or unusual punishment. We disagree.

G.S. 14-27.4(b) provides that "[a]ny person who commits an offense defined in this section is guilty of a Class B felony." "Clearly the legislature determined that whether or not accompanied by violence or force, acts of a sexual nature when performed upon a child are sufficiently serious to warrant the punishment mandated for Class B Felonies. Since it is the function of the legislature and not the judiciary to determine the extent of punishment to be imposed, we accord substantial deference to the wisdom of that body." 312 N.C. at 763-64, 324 S.E.2d at 837. "The imposition of a mandatory sentence of life imprisonment for first-degree sexual offense is not so disproportionate as to constitute a violation of the eighth amendment of the Constitution of the United States." *Id.* at 764, 324 S.E.2d at 837. In *State v. Cook,* 318 N.C. 674, 351 S.E.2d 290 (1987), defendant argued that the imposition of the mandatory life sentence for first degree sexual offense was unconstitutional. The *Cook* court declined to re-examine that question since it had previously determined that the mandatory life sentence for first degree sexual offense was constitutional in *Higginbottom, supra.*

After careful review of this record, we hold that defendant has failed to prove that the mandatory sentence violates his con-

**IN RE APPEAL OF GENERAL TIRE**

[102 N.C. App. 38 (1991)]

stitutional right to be free from cruel and unusual punishment. This assignment of error is overruled.

Accordingly, we find no error.

No error.

Judges JOHNSON and PARKER concur.