IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-216

No. COA19-282

Filed 5 April 2022

Caldwell County, No. 15 CRS 052216

STATE OF NORTH CAROLINA

v.

GEORGE WILLIAM SHEFFIELD, Defendant.

Appeal by Defendant from judgment entered 23 April 2018 by Judge Joseph N. Crosswhite in Caldwell County Superior Court. Heard in the Court of Appeals 11 March 2020.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph Finarelli, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S. Zimmer, for defendant-appellant.*

MURPHY, Judge.

A trial court errs where it admits evidence that does not have any tendency to make any fact of consequence more or less likely. However, where that error does not have a probable impact on the jury's finding that a defendant was guilty, the error does not rise to plain error and does not entitle a defendant to relief. Here, the trial court's admission of relevant photographs of condoms was proper. Additionally, the trial court's improper admission of irrelevant photographs of dildos did not rise to

plain error.

¶ 2        A satellite-based monitoring ("SBM") order requiring automatic lifetime SBM that is mistakenly based on a crime the defendant did not commit is entered in error. Where that order is entered due to the mutual mistake of the State, the defendant, and the trial court, the proper remedy is to vacate without prejudice to the filing of a subsequent SBM application. Here, the trial court erred by entering automatic lifetime SBM based on the parties' and the trial court's mistaken belief that Defendant was guilty of a qualifying offense. As a result, we vacate the SBM order without prejudice to the State's ability to refile an SBM application.

¶ 3        When the State has sensitive documents that are alleged to be favorable and material to a defendant, the documents must be turned over to the defendant if, after an *in camera* review, the trial court finds the documents to be favorable and material. Where some of these documents are not turned over to the defendant, on appeal, we must review the documents to determine if the trial court erred by not providing any documents to the defendant that were both favorable *and* material. Here, after reviewing documents that the trial reviewed *in camera,* we conclude that there were favorable, but not material, documents that were not provided to Defendant. Defendant is not entitled a new trial.

## **BACKGROUND**

Defendant George William Sheffield lived next to Peter's[1] mother's boyfriend. When Peter's mother would visit her boyfriend, she would bring her children, and they would often see Defendant. Defendant would let Peter's family use his washer and dryer, let the children mow his lawn, and would occasionally make meals for Peter's family. On 23 July 2015, when Peter was twelve years old, Peter mowed Defendant's lawn. After mowing the lawn, Peter showered at Defendant's home, and Defendant washed Peter's dirty clothes. Then, Peter's family all had dinner at Defendant's home. After dinner, Peter and his younger brother sat on the couch and watched television at Defendant's home while the rest of the family left the home.

While Peter was watching television, Defendant tapped him on the shoulder and took Peter to Defendant's computer where a pornography website was open. After showing Peter the website, Defendant "whipped out his penis and started messing with it" and began talking to Peter about the pornography, including "ask[ing] if [Peter] ever did this and [if Peter had] ever seen anything like this." Peter testified:

> [a]fter [Defendant] started messing with his penis, I
> started sliding over to get away and he pulled the chair
> closer and started messing with his penis even more and
> watching more of those videos, more of them.

---

[1] Pseudonyms are used for all relevant persons throughout this opinion to protect the identity of the juvenile and for ease of reading.

> So I got tired of that and I tried to leave and that's when he grabbed me, let me get on my knees, and started sucking his penis.[2]  And then I tried to move away.  And then he started sucking my penis and that's when he pulled me into the bathroom.
>
> I was about to leave because my mother it was time for me to leave and go get ready for bed [sic].  And I went to go leave and that's when he pulled me into the bathroom before I left and grabbed the baby oil and tried to stick his penis in my butt.

At this point, Peter got up, left Defendant's home, and went to his mother's boyfriend's home where he almost immediately told his mother what Defendant had done.

¶ 6        Peter's mother took him to the Lenoir Police Department, where they met Officer Charles Barlow, and an ambulance took them to a nearby hospital where Peter's clothes were collected into evidence.  Peter was then taken to another hospital to have a sexual assault examination and a forensic interview.  During the forensic interview, Peter stated that there was a prior incident where Defendant showed Peter a glass duck that contained 10-20 square packets of an unfamiliar item, that Peter thought might contain a pill or gum, and that, prior to showing him these items, Defendant winked at Peter and told him not to tell the little kids.  The State argued

---

2 When asked "How did it come to be that you had his penis in your mouth?" Peter clarified that "[Defendant] pulled [him] to it."  Peter also clarified that "[Defendant] sucked [his] penis" after Defendant had "pulled [Peter's] pants down."

that these packets were condoms in its closing argument.

Although there was no evidence of physical injury, Carolyn Abbott, a forensic nurse examiner, testified that this was not unusual with the actions alleged. An employee from the North Carolina State Crime Laboratory testified that a sample of Peter's underwear had DNA on it, and, in response to the State asking for "the statistical odds in regard to [the DNA] belonging to someone other than [Peter] and [Defendant,]" the employee stated, "the chance of randomly selecting an unrelated individual who also could not be excluded from that multiple major that was obtained from the cutting of the underwear would be, approximately, in [the] North Carolina Caucasian population, 1 in 13.9 million[.]"[3]

Additionally, the State admitted three photographs of a dresser drawer in Defendant's bedroom without objection; one of these photographs depicted a drawer containing a condom and two dildos, and the other two depicted a Ziploc bag of condoms, one of which showed a dildo in the background. There was no suggestion at trial that the dildos were involved in any way with what happened to Peter, and the State made no comments regarding the dildos aside from when the State initially admitted the photograph portraying them into evidence.

Furthermore, prior to trial, Defendant attempted to gain access to the

---

[3] The judgment indicates that Defendant's race is "W" indicating white, or Caucasian.

personnel file of Officer Barlow, as well as the school and DSS files related to Peter. All of these documents were reviewed by the trial court *in camera.* The trial court released some of each type of these documents to Defendant and sealed the remaining documents.

Based on the events described above, the jury found Defendant guilty of first-degree sex offense with a child under N.C.G.S. § 14-27.4(a)(1),[4] and the trial court sentenced Defendant to 240 to 348 months. After sentencing Defendant, the trial court ordered Defendant to register as a sex offender for thirty years and to enroll in SBM for life upon his release from imprisonment. Underlying the imposition of lifetime SBM enrollment, the trial court found that Defendant had committed rape of a child under N.C.G.S. § 14-27.23 or sexual offense with a child under N.C.G.S. § 14-27.28.[5] The trial court also found that Defendant was convicted of an offense involving "the physical, mental, or sexual abuse of a minor." However, the trial court did not find Defendant to be a sexually violent predator, a recidivist, or to have been convicted of an aggravated offense. Defendant timely appeals.

## ANALYSIS

---

[4] N.C.G.S. § 14-27.4(a)(1) was recodified as N.C.G.S. § 14-27.29 effective 1 December 2015. As the date of the offense was 23 July 2015, we use the then-existing version of the statute, N.C.G.S. § 14-27.4(a)(1), which was effective from 1 October 1994 until 30 November 2015.

[5] At the time of the offense, these statutes were codified as N.C.G.S. § 14-27.2A and N.C.G.S. § 14-27.4A, respectively.

¶ 11    On appeal, Defendant argues (A) "the trial court plainly erred in admitting irrelevant, color photos showing 'two dildos' and condoms taken in [Defendant's] bedroom when these items were unrelated to the alleged offense and found in a separate room[;]" (B) "the trial court erred in determining that [Defendant] qualified for mandatory lifetime [SBM] because his conviction under N.C.G.S. § 14-27.4(a)(1) did not require lifetime monitoring[;]" and (C) "this Court should grant a new trial if, upon *in camera* review of the sealed records, it determines the information is favorable and material to [Defendant's] guilt or punishment."[6]

## A. Admission of the Photographs of Condoms and Dildos

¶ 12    Our Supreme Court has held:

> [T]he North Carolina plain error standard of review applies only when the alleged error is unpreserved, and it requires the defendant to bear the heavier burden of showing that the error rises to the level of plain error. To have an alleged error reviewed under the plain error standard, the defendant must specifically and distinctly contend that the alleged error constitutes plain error. Furthermore, plain error review in North Carolina is normally limited to instructional and evidentiary error.

*State v. Lawrence*, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012) (marks and citations omitted).

---

[6] Defendant also argues "Defense Counsel failed to provide effective assistance of counsel during [Defendant's] SBM hearing when he failed to subject the prosecution's case to meaningful adversarial testing." However, as discussed below, this issue is mooted by our resolution of his earlier SBM argument.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Id*. at 518, 723 S.E.2d at 334 (marks and citations omitted).

Defendant argues that the trial court plainly erred in admitting State's Exhibits P-21, P-22, and P-23, which were pictures showing condoms and dildos found in Defendant's bedroom, because they were irrelevant to the alleged incident, constituted prohibited evidence under Rule 404(b), and had a probable impact on the jury. The State contends this evidence was properly admitted under our Rules of Evidence, but also argues Rule 404(b) does not apply because "the challenged exhibits were not evidence of 'other' acts" and "mere possession of items that are lawful to possess is not character evidence."

The State relies on *State v. Sessoms*, in which we have held "wielding a machete is not a character trait" and therefore "was not 'character evidence' pursuant to . . . Rule 404(b), but rather [a witness's] description of what he saw and his reason for calling for help[.]" *State v. Sessoms*, 226 N.C. App. 381, 385, 741 S.E.2d 449, 453 (2013). However, in *Sessoms*, we did not hold that possession of an item can never

fall under Rule 404(b). *Id.* Indeed, we have consistently addressed the possession of items under Rule 404(b) in the exact context of the issue here—a defendant's possession of materials related to sex in a child sexual assault case. *See, e.g., State v. Smith*, 152 N.C. App. 514, 523, 568 S.E.2d 289, 295, *disc. rev. denied, appeal dismissed*, 356 N.C. 623, 575 S.E.2d 757 (2002); *State v. Hinson*, 102 N.C. App. 29, 36, 401 S.E.2d 371, 375, *disc. rev. denied, appeal dismissed*, 329 N.C. 273, 407 S.E.2d 846 (1991); *State v. Bush*, 164 N.C. App. 254, 261, 595 S.E.2d 715, 719 (2004); *State v. Rael*, 321 N.C. 528, 534, 364 S.E.2d 125, 129 (1988); *State v. Brown*, 178 N.C. App. 189, 193, 631 S.E.2d 49, 52 (2006). We address this issue under Rule 401 and Rule 404(b).

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (2021). "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly or by these rules. Evidence which is not relevant is not admissible." N.C.G.S. § 8C-1, Rule 402 (2021).

> Evidence of other . . . acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence

of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (2021).

In *Smith*, we held:

> evidence of [the] defendant's possession of pornographic
> materials, without any evidence that [the] defendant had
> viewed the pornographic materials with the victim, or any
> evidence that [the] defendant had asked the victim to look
> at pornographic materials other than the victim's mere
> speculation, was not relevant to proving [the] defendant
> committed the alleged offenses in the instant case and
> should not have been admitted by the trial court.

*Smith*, 152 N.C. App. at 523, 568 S.E.2d at 295.

There, we relied on *State v. Doisey*, *Hinson, and State v. Maxwell.  See State v. Doisey,* 138 N.C. App. 620, 626, 532 S.E.2d 240, 244, *disc. rev. denied*, 352 N.C. 678, 545 S.E.2d 434 (2000), *cert. denied*, 531 U.S. 1177, 148 L. Ed. 2d 1015 (2001); *Hinson*, 102 N.C. App. at 36, 401 S.E.2d at 375; *State v. Maxwell*, 96 N.C. App. 19, 24, 384 S.E.2d 553, 556 (1989), *disc. rev. denied*, 326 N.C. 53, 389 S.E.2d 83 (1990).  In *Smith*, we described the holdings of each of these cases.  *Smith*, 152 N.C. App. at 521-22, 568 S.E.2d at 294.  We described *Doisey as* holding that "evidence that the defendant placed a camcorder in a bathroom used by children and taped the activities in the bathroom was not properly admitted to show 'design or scheme to take sexual advantage of children.'"  *Id.*  We described *Hinson* as holding that "evidence that the defendant possessed photographs depicting himself in women's clothing, dildos,

lubricants, vibrators and two pornographic books, was not properly admitted to show 'proof of intent, preparation, plan, knowledge and absence of mistake,' in [a] sexual offense case involving seven-year-old victim." *Id*. at 522, 568 S.E.2d at 294. Finally, we described *Maxwell* as holding that "evidence that the defendant frequently appeared nude in front of his children and had fondled himself in presence of daughter was not properly admitted to show [the] 'defendant's plan or scheme to take advantage of his daughter.'" *Id*.

¶ 18        In *Bush*, we held that the admission of evidence showing the defendant had previously purchased and owned pornography was error because there was no evidence to suggest that the defendant had shown, or provided, the pornography to the victim. *Bush*, 164 N.C. App. at 261-62, 595 S.E.2d at 719-20.

> [T]he mere possession of photographic images, whether in still form or on a videotape, has been deemed inadmissible as the defendant's possession of such materials does not establish motive, intent, common scheme or plan; rather the possession of such materials is held only to show the defendant has the propensity to commit the offense for which he is charged and to be highly inflammatory.

*Id*. at 262, 595 S.E.2d at 720 (citing *Smith*, 152 N.C. App. at 521-22, 568 S.E.2d at 294, *Doisey*, 138 N.C. App. at 628, 532 S.E.2d at 246).

¶ 19        However, "our appellate courts have long recognized that lay testimony and other evidence can be admissible under Rule 404(b) to show that a defendant engaged in grooming-like behavior." *State v. Goins*, 244 N.C. App. 499, 516, 781 S.E.2d 45, 56

(2015). In *State v. Williams*, in response to an argument that evidence of the defendant taking the child victim to see an x-rated movie violated Rule 404(b), our Supreme Court upheld the admission of evidence because "the [victim's] presence at the film at [the] defendant's insistence, and his comments to her show his preparation and plan to engage in sexual intercourse with her and assist in that preparation and plan by making her aware of such sexual conduct and arousing her." *State v. Williams*, 318 N.C. 624, 632, 350 S.E.2d 353, 358 (1986).

In *Rael*, our Supreme Court, again in response to a challenge to evidence under 404(b), upheld the admission of evidence of pornographic magazines and video tapes because "the video tape and magazines and Detective Martin's testimony concerning them were relevant to corroborate the victim's testimony that the defendant had shown him such materials at the time the defendant committed the crimes for which he was on trial[,]" and thus as "relevant [evidence] to a fact or issue other than the character of the accused, Rule 404(b) did not require that they be excluded from the evidence at trial." *Rael*, 321 N.C. at 534, 364 S.E.2d at 129.

In *Brown*, in response to a challenge under Rule 404(b) to the admission of photographs of nude women, we upheld the admission of the photographs because

> [the] defendant showed [the victim] four photographs of
> nude adult women with whom she was acquainted prior to
> the first time [the] defendant engaged in a sexual act with
> her, and that [the] defendant told her that he was going to
> take similar pictures of her. [The victim] further testified

> that [the] defendant attempted to take pictures of her, but
> that [the] defendant was unable to get her grandmother's
> camera. The admission of the photographs into evidence
> served to corroborate [the victim's] testimony of [the]
> defendant's actions and provided evidence of a plan and
> preparation to engage in sexual activities with her.

*Brown*, 178 N.C. App. at 193, 631 S.E.2d at 52.

¶ 22        Here, the evidence falls under both aspects of our caselaw. In his forensic interview, which was played for the jury, Peter described an incident where Defendant showed him a square packet found inside a glass duck, winked at Peter, and told Peter there was gum inside of it. Peter didn't know if it was a pill, gum, or something else that "could make 'em get silly or something." Although Peter did not testify regarding this information, the introduction of the condoms found in Defendant's home, even though they were not in a glass duck, corroborated Peter's statement, as it showed Defendant owned condoms that matched the description of the items Peter claims Defendant showed him. This evidence was relevant to corroborate the potential grooming behavior, and was used for the purposes of showing planning and preparation by Defendant, as well as to corroborate Peter's testimony. The admission of the photographs of the condoms was not error under Rule 401 or Rule 404(b).

¶ 23        However, the admission of State's Exhibit P-21, which is a photograph of the condoms with the dildos, was error under Rule 401 and Rule 404(b). There was no

evidence presented that Defendant discussed, showed, or exposed Peter to a dildo. As a result, the dildos were entirely irrelevant to any fact of consequence related to Defendant's guilt or innocence. The State argues State's Exhibit P-21, the photograph depicting the dildos and condoms, showed the context of where the condoms were located in Defendant's home and that, after the evidence was introduced, the State never mentioned the dildos at any stage of the trial. The State provides no reason as to why the exact location of the condoms was significant when it was undisputed that they were found in Defendant's home, and we are unaware of such a reason. Additionally, there were other photographs showing the condoms found in the home without the dildos in the background, which would have equally corroborated Peter's statement regarding the square packets. Even if State's Exhibit P-21 was relevant, Rule 404(b) should have resulted in the exclusion of the photograph. While in *Bush, Smith,* and *Hinson* there was testimony given regarding the possession of the material related to sex, it makes no difference whether the evidence was admitted by testimony or by a photograph. Here, like in *Bush, Smith,* and *Hinson,* the jury was presented with evidence unrelated to the offenses alleged showing the possession of materials related to sex. This evidence had no relevant purpose, and instead, if used, could only be used by the jury as character evidence in contravention of Rule 404(b). The trial court erred in admitting this evidence.

¶ 24    However, this error does not rise to the level of plain error as it did not have a

probable impact on the jury. Defendant argues the admitted photographs had a probable impact on the jury because they paint him as someone who had "prurient interests in sexual gratification and [as] a sexual deviant who would be more likely to engage in a sex act with a child." His basis for this argument is "[s]ex toys, such as dildos, are often seen as immoral or obscene" and they "allowed the State to imply that [Defendant] was bisexual or gay—even though the trial court explicitly barred the State from introducing evidence about [Defendant's] sexuality." Assuming, *arguendo*, that Defendant's contention about dildos is true, he cannot show plain error here.

Despite the trial court barring the State from introducing evidence regarding Defendant's sexuality, evidence implying Defendant is bisexual or gay was introduced without objection, and was not challenged on appeal:

> [DETECTIVE:] I told [Defendant] that there were some issues with pornography. I asked him if there was any pornography in the residence. He told me that there was not. He said he only researched pornography online. He said he looked them up on websites called SexTube and GayTube.
>
> [THE STATE:] And did he say anything else at that point?
>
> [DETECTIVE:] I asked what type of pornography that he watched and he told me bisexual.

As a result, we do not consider any potential prejudice from the implication Defendant is bisexual or gay, as the implication would have been before the jury

regardless of any error.

¶ 26      However, this is not the end of our inquiry, as we must also consider Defendant's argument that the erroneous admission of a photograph with dildos in the background suggested Defendant was immoral and/or a sexual deviant more likely to sexually assault a child. In weighing the effect of this evidence, it is important to note that, aside from laying the foundation for the photographs and admitting the photograph into evidence, the only other reference made to the dildos was made by Defendant in closing arguments when he stated:

> You saw some pictures. I think the State is trying to convey that he's a deviant, but he's got condoms. He's a single man. He had two sex toys in a drawer. I don't know if you saw from the pictures, but there were a few pairs of women's underwear. Again, it looks bad, but it is not illegal. He is a single man. He admits to looking at porn on his computer. Again, that's not illegal.

Our Supreme Court has previously focused on the minimal emphasis of irrelevant evidence to conclude there was no prejudicial error. *See State v. Rose*, 335 N.C. 301, 322-23, 439 S.E.2d 518, 529-30 ("[The] [d]efendant has failed to show, however, that the admission of the Bibles into evidence was prejudicial. In fact, evidence of the presence of the Bibles in the victim's apartment was introduced through photographs of the apartment, including one that clearly depicted the Bibles on a bookshelf. [The] [d]efendant did not object to the introduction of these photographs. Furthermore, [the] defendant himself points out that after the Bibles were admitted they were only

mentioned once again during the trial when the victim's sister testified that she had seen the Bibles in the victim's apartment. Thus, we conclude that the admission of the Bibles into evidence did not constitute error prejudicial to [the] defendant."), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 883 (1994), *and overruled on other grounds by State v. Buchanan*, 1353 N.C. 332, 543 S.E.2d 823 (2001).

¶ 27 The evidence properly introduced at trial and the evidence that is not the subject of this appeal is sufficiently strong that the improperly admitted evidence, in light of its minimal emphasis, did not have a probable impact on the jury. Peter reported the incident to his mother almost immediately after it happened. His mother immediately took him to the police and then two hospitals for the proper examinations and interviews to be performed. Peter testified regarding Defendant sexually assaulting him, which was corroborated by Peter's mother's testimony regarding what Peter had told her Defendant had done. A recording of the forensic interview was published to the jury, which also corroborated Peter's testimony regarding Defendant sexually assaulting him.[7] Multiple exhibits were entered into evidence that corroborated the incident, including: State's Exhibit P-26, photographs of the baby oil used; State's Exhibit P-39, Defendant's ripped shirt; and exhibits

---

[7] We note that, while some details of these accounts differed, both of Peter's accounts of what happened were consistent in that they reflected "there was pornography involved; there was oral sex involved; there was an attempt at anal sex; and there was something about baby oil."

related to the State's DNA sample analysis. Additionally, there was testimony regarding the DNA found in Peter's underwear that showed there was a 1 in 13.9 million chance of randomly selecting an unrelated Caucasian individual who could not be excluded from the DNA sample. Based on this evidence and the lack of an indication in the Record that the dildos were emphasized by the State, the error in admitting State's Exhibit P-21 does not rise plain error.

**B. SBM Order**

¶ 28 Defendant argues, and the State concedes, that the trial court erred in determining that Defendant was subject to automatic lifetime SBM. However, the State contends that the SBM order should be remanded to the trial court to make an SBM determination, while Defendant contends that the SBM order should be reversed.

¶ 29 Although Defendant did not object at the trial court level, the trial court's error is still proper for our review pursuant to N.C.G.S. § 15A-1446(d)(18). N.C.G.S. § 15A-1446(d)(18) (2021) ("Errors based upon any of the following grounds, which are asserted to have occurred, may be the subject of appellate review even though no objection, exception or motion has been made in the trial division. . . . The sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law."). This approach is consistent with our prior holding in *State v. Dye*—that an error in an

SBM proceeding that violated statutory mandates was preserved by N.C.G.S. § 15A-1446(d)(18), where "the trial court erred by ordering [the defendant] to enroll in the SBM program for a period of thirty years without sufficient findings of fact that [the] [d]efendant required the highest possible level of supervision and monitoring[.]" *State v. Dye*, 254 N.C. App. 161, 167-68, 802 S.E.2d 737, 741 (2017). As this issue is preserved for our review, we turn to the merits.

¶ 30    The SBM statute has two initial steps:

> (a) When an offender is convicted of a reportable conviction as defined by [N.C.G.S. §] 14-208.6(4), during the sentencing phase, the district attorney shall present to the court any evidence that (i) the offender has been classified as a sexually violent predator pursuant to [N.C.G.S. §] 14-208.20, (ii) the offender is a recidivist, (iii) the conviction offense was an aggravated offense, (iv) the conviction offense was a violation of [N.C.G.S. §] 14-27.23 or [N.C.G.S. §] 14-27.28, or (v) the offense involved the physical, mental, or sexual abuse of a minor. The district attorney shall have no discretion to withhold any evidence required to be submitted to the court pursuant to this subsection.
>
> . . . .
>
> (b) After receipt of the evidence from the parties, the court shall determine whether the offender's conviction places the offender in one of the categories described in [N.C.G.S. §] 14-208.40(a), and if so, shall make a finding of fact of that determination, specifying whether (i) the offender has been classified as a sexually violent predator pursuant to [N.C.G.S. §] 14-208.20, (ii) the offender is a recidivist, (iii) the conviction offense was an aggravated offense, (iv) the conviction offense was a violation of [N.C.G.S. §] 14-27.23 or [N.C.G.S. §] 14-27.28, or (v) the offense involved the

physical, mental, or sexual abuse of a minor.

N.C.G.S. § 14-208.40A(a)-(b) (2018).[8] Here, after trial, Defendant, the State, and the trial court all incorrectly agreed that Defendant was convicted of a sexual offense with a child under N.C.G.S. § 14-27.28,[9] and therefore was subject to mandatory SBM for life. In reality, Defendant was convicted of what was codified as N.C.G.S. § 14-27.4(a)(1) at the time of the offense and had been recodified to N.C.G.S. § 14-27.29 by the time of trial. Defendant was ineligible for automatic lifetime SBM because the trial court found the other grounds for automatic lifetime SBM were not present. *See* N.C.G.S. § 14-208.40A(c) (2018) (listing the grounds for automatic lifetime SBM enrollment as being "a sexually violent predator, [being] a recidivist, having committed an aggravated offense, or [being] convicted of [N.C.G.S. §] 14-27.23 or [N.C.G.S. §] 14-27.28").

However, Defendant was eligible for the risk assessment track under N.C.G.S. § 14-208.40A(d) and (e):

> (d) If the court finds that the offender committed an offense that involved the physical, mental, or sexual abuse of a minor, that the offense is not an aggravated offense or a violation of [N.C.G.S. §] 14-27.23 [(rape of a child; adult offender)] or [N.C.G.S. §] 14-27.28 [(first degree sexual

---

[8] We note that N.C.G.S. § 14-208.40A was amended with an effective date of 1 December 2021. *See* N.C.G.S. § 14-208.40A (2021); 2021 S.L. 138 § 18(d). However, the amendment is not relevant for our resolution of the issues presented in this appeal.

[9] As discussed above, at the time of the offense, this statute was codified as N.C.G.S. § 14-27.4A.

offense)] and the offender is not a recidivist, the court shall
order that the Division of Adult Correction do a risk
assessment of the offender.   The Division of Adult
Correction . . . shall have a minimum of 30 days, but not
more than 60 days, to complete the risk assessment of the
offender and report the results to the court.

(e) Upon receipt of a risk assessment from the Division of
Adult Correction . . . pursuant to subsection (d) of this
section, the court shall determine whether, based on the
Division of Adult Correction's risk assessment, the offender
requires the highest possible level of supervision and
monitoring.  If the court determines that the offender does
require the highest possible level of supervision and
monitoring, the court shall order the offender to enroll in a
satellite-based monitoring program for a period of time to
be specified by the court.

N.C.G.S. § 14-208.40A(d)-(e) (2018).  Under this statute, Defendant was entitled to a

risk assessment that would provide the basis for the level of SBM imposed.

¶ 32     Here, there was no evidentiary hearing, which would have been required either

way under our caselaw,[10] and the parties and the trial court all improperly

characterized Defendant's conviction.  Due to the failure of all parties to accurately

characterize the offense Defendant was found guilty of, resulting in improper SBM

sentencing, we vacate the SBM order without prejudice to the State's ability to file a

---

[10] *See Grady v. North Carolina,* 575 U.S. 306, 310-311, 191 L. Ed. 2d 459, 462-63 (2015)
(citations omitted) ("The reasonableness of a search depends on the totality of the
circumstances, including the nature and purpose of the search and the extent to which the
search intrudes upon reasonable privacy expectations.  The North Carolina courts did not
examine whether the State's monitoring program is reasonable—when properly viewed as a
search—and we will not do so in the first instance.").

subsequent SBM application.

In *State v. Greene,* where the Defendant made a motion for involuntary dismissal under Rule 41(b) of our Rules of Civil Procedure, we held the State's concession that it failed to carry its burden to conduct a *Grady* hearing meant that it necessarily conceded that the trial court should have granted Defendant's motion to dismiss the SBM proceedings because "dismissal under Rule 41(b) is to be granted if the plaintiff has shown no right to relief[.]" *State v. Greene*, 255 N.C. App. 780, 783-84, 806 S.E.2d 343, 345 (2017) (citing *Jones v. Nationwide Mut. Ins. Co.*, 42 N.C. App. 43, 46-47, 255 S.E.2d 617, 619 (1979)). As a result, the proper remedy was to reverse because, at the trial court, "the [SBM] matter would have ended there." *Id*. at 784, 806 S.E.2d at 345.

*Greene* is not controlling because here there was no motion to dismiss under Rule 41(b), nor an objection made, and all parties were operating under an error of law. *Greene* distinguished the facts before it from *Harrell v. W.B. Lloyd Constr. Co.*, stating:

> In *Harrell*, [] remand was appropriate because "incompetent evidence ha[d] been erroneously considered by the trial judge in his ruling on the sufficiency of [the] plaintiff's evidence." The evidence was insufficient *in light of* the improperly considered evidence. Therefore, it was necessary to remand the case in order for the trial court to consider the matter anew absent the erroneously admitted evidence. In contrast, there has been no contention in this case that the State's evidence was improperly considered

by the trial court.

*Id*. at 783, 806 S.E.2d at 345 (citations omitted) (quoting *Harrell v. W.B. Lloyd Constr. Co.*, 300 N.C. 353, 358, 266 S.E.2d 626, 630 (1980)). Here, like in *Harrell,* the trial court based its order on an error of law. As a result, like in *Harrell,* the appropriate remedy is to remand.

¶ 35 Furthermore, here we are guided by *State v. Bursell,* 258 N.C. App. 527, 533-34, 813 S.E.2d 463, 467-68 (2018) ("*Bursell I*"), *rev'd in part and aff'd in part by State v. Bursell,* 372 N.C. 196, 827 S.E.2d 302 (2019) ("*Bursell II*"). In *Bursell I,* we distinguished *Greene* and vacated the SBM order entered there without prejudice to the State's ability to file a subsequent SBM application. *Id*. at 533-34, 813 S.E.2d at 467-68. In *Bursell II,* our Supreme Court affirmed our decision "to vacate the trial court's SBM order without prejudice to the State's ability to file another application for SBM." *Bursell II,* 372 N.C. at 201, 827 S.E.2d at 306. Similarly, because *Greene* is distinct from the facts before us here, we may elect not to reverse the SBM order with prejudice to the State's ability to file a subsequent SBM application. Here, like in *Bursell I*, we vacate the SBM order subjecting Defendant to lifetime SBM without prejudice to the State's ability to file a subsequent SBM application. *See Bursell I,* 258 N.C. App. at 534, 813 S.E.2d at 468; *Bursell II,* 372 N.C. at 201, 827 S.E.2d at 306. Additionally, Defendant's ineffective assistance of counsel claim on the basis of Defense Counsel's failure to object to the imposition of lifetime SBM for failure to

conduct a *Grady* hearing is rendered moot, and we do not address it.

### C. *In Camera* Review of Sealed Documents

¶ 36        Defendant argues that we should review the sealed documents previously reviewed *in camera* by the trial court for any evidence that is "favorable and material to his guilt or punishment[,]" and further remand the case for a new trial if it is determined he was denied access to such information at the trial court level.

> A defendant who is charged with sexual abuse of a minor has a constitutional right to have the records of the child abuse agency that is charged with investigating cases of suspected child abuse, as they pertain to the prosecuting witness, turned over to the trial court for an *in camera* review to determine whether the records contain information favorable to the accused and material to guilt or punishment.

*State v. McGill*, 141 N.C. App. 98, 101, 539 S.E.2d 351, 355 (2000); *see also State v. Hardy*, 293 N.C. 105, 128, 235 S.E.2d 828, 842 (1977) ("[W]e hold that since realistically a defendant cannot know if a statement of a material State's witness covering the matters testified to at trial would be material and favorable to his defense, *Brady* and *Agurs* require the judge to, at a minimum, order an *in camera* inspection and make appropriate findings of fact. As an additional measure, if the judge, after the *in camera* examination, rules against the defendant on his motion, the judge should order the sealed statement placed in the record for appellate review."). Further,

> [i]f the trial court conducts an *in camera* inspection but denies the defendant's request for the evidence, the evidence should be sealed and placed in the record for appellate review. On appeal, this Court is required to examine the sealed records to determine if they contain information that is both favorable to the accused and material to either his guilt or punishment. If the sealed records contain evidence which is both favorable and material, [the] defendant is constitutionally entitled to disclosure of this evidence.

*McGill*, 141 N.C. App. at 101-02, 539 S.E.2d at 355 (marks and citations omitted).

> The duty to disclose encompasses impeachment evidence as well as exculpatory evidence. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

> A reasonable probability is a probability sufficient to undermine confidence in the outcome. Therefore, in determining whether the defendant's lack of access to particular evidence violated his right to due process, the focus should be on the effect of the nondisclosure on the outcome of the trial, not on the impact of the undisclosed evidence on the defendant's ability to prepare for trial.

*State v. Lynn,* 157 N.C. App. 217, 220, 578 S.E.2d 628, 631 (2003) (marks and citations omitted).

¶ 37    Here, following an *in camera* review of DSS and school records relating to Peter, the trial court found "certain documents to be discoverable" while others were deemed to be "duplicative of the documents released, not admissible, not relevant, or otherwise not subject to discovery[.]" Accordingly, the trial court sealed the documents. Further, after a separate *in camera* review was conducted of the

personnel file of Officer Barlow, the trial court entered an order stating the trial court "conclude[d] that certain portions of [Officer Barlow's personnel records] should be released for use in connection with [Officer Barlow's] potential testimony in this case. The [c]ourt notes that other portions of these personnel records concerned an extra-marital affair which is not admissible for impeachment purposes under North Carolina law."

¶ 38    Pursuant to *McGill* and *Hardy*, Defendant is entitled to appellate-level *in camera* review of documents not released previously by the trial court.

¶ 39    Our *in camera* review of the documents here reveals the order of the trial court related to Officer Barlow did not restrict Defendant's access to evidence that was favorable or material. However, some portions of the DSS and school records that were not disclosed to Defendant were favorable to him. For Defendant to be entitled to a new trial where withheld documents were favorable, we must also determine that the withheld documents were material. *See McGill*, 141 N.C. App. at 101-02, 539 S.E.2d at 355 (marks omitted) ("If the sealed records contain evidence which is both favorable and material, [the] defendant is constitutionally entitled to disclosure of this evidence.").

¶ 40    "Evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Lynn*, 157 N.C. App. at 220, 578 S.E.2d at 631 (quoting *State v. Holadia*, 149 N.C.

App. 248, 256-57, 561 S.E.2d 514, 520-21, *disc. rev. denied*, 355 N.C. 497, 562 S.E.2d 432 (2002)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (marks omitted).

¶ 41    After a careful consideration of this case in its entirety, we hold that the withheld documents do not undermine our confidence in the outcome of Defendant's trial and the withheld documents were therefore not material. The trial court did not err in not turning over the withheld documents. In order to maintain the confidentiality of these documents, further analysis of this issue, including a discussion of those documents favorable to Defendant, are made in an order entered under seal. This order will remain under seal pending further consideration, if any, or release by our Supreme Court.

## **CONCLUSION**

¶ 42    The trial court did not err in admitting photographs of condoms found inside Defendant's home. The trial court did, however, err in admitting photographs of dildos found in Defendant's home, but this error did not rise to the level of plain error. Additionally, we vacate the SBM order and remand without prejudice to the State's ability to file a subsequent SBM application. Finally, after a comprehensive review of the sealed documents from the trial court's *in camera* review, we conclude the trial court did not err as there was not any material evidence that was not provided to Defendant.

NO ERROR IN PART; VACATED AND REMANDED IN PART.

Judge ZACHARY concurs.

Judge ARROWOOD concurs in result only.